IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Senior Judge Marcia S. Krieger

Civil Action No. 17-CV-0046-MSK-KMT

WILLIAM CURTIS,

    Plaintiff,

*v.*

RENEE LLOYD,

    Defendant.

---

**OPINION AND ORDER ON MOTION FOR SUMMARY JUDGMENT**

---

**THIS MATTER** comes before the Court on the Defendant's Motion for Summary Judgment (**# 108**), the Plaintiff's Response (**# 117**), and the Defendants' Reply (**# 119**). For the following reasons, the motion is denied.

## I. JURISDICTION

The Court exercises jurisdiction under 28 U.S.C. § 1331.

## II. BACKGROUND[1]

Plaintiff William Curtis[2] was an inmate at the Fremont Correctional Facility within the purview of the Colorado Department of Corrections. In January 2015, Mr Curtis experienced a

---

[1] The Court recounts the facts in the light most favorable to Mr. Curtis, the nonmoving party. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002). There are factual disputes, which the Court notes in its analysis.

[2] Mr. Curtis was represented by counsel in this action. Following withdrawal of counsel (**# 82**), Mr. Curtis now proceeds pro se, so the Court liberally construes his filings. *See Haines v. Kerner,* 404 U.S. 519, 520 (1972) (holding pro se filings to less stringent standards than formal pleadings drafted by licensed attorneys).

1

number of symptoms of diabetes, most notably a loss of almost 30 pounds in a period of two weeks.  On February 7, 2015, a correctional officer noticed this extreme and rapid weight loss and requested that he be seen at the medical clinic.  The next morning, on February 8, Mr. Curtis was seen at the Fremont medical clinic by Defendant Nurse Renee Lloyd and Nurse Practitioner Trudy Sicotte, Nurse Lloyd's supervisor.  Despite exhibiting symptoms of diabetes keto-acidosis, Nurse Lloyd determined that Mr. Curtis was not experiencing a medical emergency and he was returned to his cell house without treatment.  Later that day, he lost consciousness.  NP Sicotte ordered that Mr. Curtis be transported to a nearby hospital.

The Second Amended Complaint (**# 43**), alleges two Eighth Amendment violations under 42 U.S.C. § 1983 against Nurse Lloyd. It alleges that Nurse Lloyd (1) unreasonably delayed treatment and (2) unreasonably denied treatment.  Nurse Lloyd moves for summary judgment on both claims (**# 108**).

### III.    LEGAL STANDARD

Rule 56 of the Federal Rules of Civil Procedure facilitates the entry of a judgment only if no trial is necessary.  *See White v. York Int'l Corp.*, 45 F.3d 357, 360 (10th Cir. 1995). Summary adjudication is authorized when there is no genuine dispute as to any material fact and a party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).  Substantive law governs what facts are material and what issues must be determined.  It also specifies the elements that must be proved for a given claim or defense, sets the standard of proof, and identifies the party with the burden of proof.  *See Anderson v. Liberty Lobby Inc.*, 477 U.S. 242, 248 (1986); *Kaiser-Francis Oil Co. v. Producer's Gas Co.*, 870 F.2d 563, 565 (10th Cir. 1989). A factual dispute is "genuine" and summary judgment is precluded if the evidence presented in support of and opposition to the motion is so contradictory that, if presented at trial, a judgment

could enter for either party. *See Anderson*, 477 U.S. at 248. When considering a summary judgment motion, a court views all evidence in the light most favorable to the non-moving party, thereby favoring the right to a trial. *See Garrett v. Hewlett Packard Co.*, 305 F.3d 1210, 1213 (10th Cir. 2002).

If the movant has the burden of proof on a claim or defense, the movant must establish every element of its claim or defense by sufficient, competent evidence. *See* Fed. R. Civ. P. 56(c)(1)(A). Once the moving party has met its burden, to avoid summary judgment the responding party must present sufficient, competent, contradictory evidence to establish a genuine factual dispute. *See Bacchus Indus. Inc. v. Arvin Indus. Inc.*, 939 F.2d 887, 891 (10th Cir. 1991); *Perry v. Woodward*, 199 F.3d 1126, 1131 (10th Cir. 1999). If there is a genuine dispute as to a material fact, a trial is required. If there is no genuine dispute as to any material fact, no trial is required. The court then applies the law to the undisputed facts and enters judgment.

If the moving party does not have the burden of proof at trial, it must point to an absence of sufficient evidence to establish the claim or defense that the non-movant is obligated to prove. If the respondent comes forward with sufficient competent evidence to establish a *prima facie* claim or defense, a trial is required. If the respondent fails to produce sufficient competent evidence to establish its claim or defense, then the movant is entitled to judgment as a matter of law. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986).

## IV. DISCUSSION

Nurse Lloyd challenges both Mr. Curtis' ability to prove a *prima facie* case and invokes the doctrine of qualified immunity. The arguments overlap when the qualified immunity analysis is applied.

Qualified immunity protects individual state actors from civil liability if their conduct "does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Messerschmidt v. Millender*, 565 U.S. 535, 546 (2012). When a defendant asserts qualified immunity, the burden shifts to the plaintiff to: (1) show facts that "make out a violation of a constitutional right," and (2) establish that, at the time of the conduct at issue, it was clearly established under existing law that the defendant's conduct would breach a constitutional right. *Pearson v. Callahan*, 555 U.S. 223, 232 (2009). The Court may address these questions in whichever order is best suited to the case. If the plaintiff fails to satisfy either prong of this inquiry, the Court "must grant the defendant qualified immunity." *Holland ex rel. Overdorff v. Harrington*, 268 F.3d 1179, 1186 (10th Cir. 2001). However, if the plaintiff establishes the violation of a clearly established right, it becomes the defendant's burden to prove is no genuine issue of material fact and that she is entitled to judgment as a matter of law. *Medina v. Cram*, 252 F.3d 1124, 1128 (10th Cir. 2001).

For all practical purposes, the question of whether a constitutional right has been violated is indistinguishable from the question of whether the Plaintiff has come forward with sufficient evidence to establish a *prima facie* claim. To proceed to trial, a plaintiff must show sufficient evidence to demonstrate the existence of a cognizable claim for a constitutional violation. In deference to the right to trial, the Court considers the evidence in the light most favorable to the plaintiff and assesses whether it is sufficient to demonstrate the violation of a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2001).

The second inquiry focuses on whether the contours of the constitutional right and the fact that the subject conduct would violate it was "clearly established" — in essence, was the law so well settled that in these circumstances a "reasonable official would have understood" that his

4

or her conduct violated the plaintiff's constitutional right. *Reichle v. Howards*, 132 S. Ct. 2088, 2093 (2012). The burden is on the plaintiff to point to Supreme Court or Tenth Circuit precedent (or the clear weight of opinion of other circuit courts) that recognizes an actionable constitutional violation in the circumstances presented. *Schwartz v. Booker*, 702 F.3d 573, 587–88 (10th Cir. 2012); *see also Thomas*, 607 F.3d at 669 (plaintiff bears the burden of citing to requisite authority). It is not necessary for the plaintiff to point to a case with identical facts, but the plaintiff must identify some authority that considers the issue not as a broad general proposition but instead in the context of facts similar to those at issue. *See, e.g.*, *Brosseau v. Haugen*, 543 U.S. 194, 198–200 (2004).

Although Mr. Curtis has pled two different claims — one for delayed treatment and one for denied treatment — the analysis is the same in many respects. The factual question is whether Mr. Curtis has come forward with sufficient evidence to establish that Nurse Lloyd deliberately disregarded his condition when she determined that he was not experiencing a medical emergency and that no treatment was required. If so, the legal question is whether it was clearly established that failing to treat Mr. Curtis would violate his constitutional rights.

**A.     Constitutional Violation**

The Court begins with the question of whether there is evidence to support a *prima facie* claim. The Eighth Amendment requires prison officials "to provide humane conditions of confinement by ensuring inmates receive the basic necessities of adequate food, clothing, shelter, and medical care and by taking reasonable measures to guarantee the inmate's safety." *Barney v. Pulsipher*, 153 F.3d 1299, 1310 (10th Cir. 1998). It is well established that officials violate the Eighth Amendment if their deliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain. *Estelle v. Gamble*, 429 U.S. 97, 104

(1976). However, a claim based on an inadvertent failure to provide adequate medical care or alleging that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Rather, there must be evidence of acts or omissions that show deliberate indifference to an inmate's serious medical needs. *Self v. Crum*, 439 F.3d 1227, 1230 (10th Cir. 2006).

To show a *prima facie* Eighth Amendment violation, an inmate must come forward with evidence of a provider's objective and subjective indifference to the inmate's medical needs. Objective indifference requires evidence of a "sufficiently serious" medical need. *Oxendine v. Kaplan*, 241 F.3d 1272, 1276 (10th Cir. 2001). Subjective indifference requires evidence showing that a provider acted with a culpable state of mind — that is, knowing or with conscious disregard of the inmate's serious condition, the provider disregarded the inmate's medical need. *Self*, 439 F.3d at 1230–31. Deliberate indifference does not require a showing of express intent to harm, rather, it is enough that the official acted or failed to act despite his knowledge of a substantial risk of serious harm. *Mata v. Saiz*, 427 F.3d 745, 752 (10th Cir. 2005); *see also Farmer v. Brennan*, 511 U.S. 825, 836 (1994).

As to the objective component, Nurse Lloyd does not dispute whether Mr. Curtis had a serious medical condition.[3] The Court therefore considers the Mr. Curtis' condition to be objectively serious for purposes of summary judgment.

As to subjective indifference, Mr. Curtis offers treatment records that memorialize a

---

[3] Instead, Nurse Lloyd argues that there was no substantial harm from the delay in medical care. This argument misses the point — substantial harm only relates to Mr. Curtis' delay claim, not his denial claim. Even so, diabetes is a serious medical condition, see Lemay v. Winchester, 382 F. App'x 698, 703 (10th Cir. 2010), and the undisputed evidence that Mr. Curtis fell unconscious later in the day and was transported to a hospital by ambulance suggests substantial harm.

February 7, 2015, call made by security personnel requesting that Mr. Curtis "be seen by provider ASAP for sudden weight loss, states unable to eat and unsteady on feet. Offender has lost two teeth in the last month, security states just became loose and had to be removed." (**# 116 at 3**.) He was seen on February 8, and the records of that examination reflect that Mr. Curtis had unquenchable thirst, weight loss, frequent urination, visual changes, kidney pain, leg cramps, and dry skin. (**# 116 at 4**.) These records quote Mr. Curtis as saying, "I've been thirsty; can't drink enough, had [weight] loss of about 20 lbs. in 2 weeks and I feel so weak". (**#116 at 4**.) Mr. Curtis states in his declaration that he informed Nurse Lloyd of "several symptoms including "weight loss, I could not eat, vomiting, dizziness, dehydration, etc.". (**#116 ¶ 3**.) He also stated in his deposition that he described his symptoms in front of Nurse Lloyd: "I am really sick, I am losing weight, I am losing teeth, I am dehydrated a lot, I am urinating a lot, . . . [the] pains in me, my kidneys, vomiting". (**# 116 at 8–9 (81:6–82:25)**.)

> Nurse Lloyd disputes these facts, stating in her declaration:
>
> On the morning of February 8th, Mr. Curtis came to the clinic. I was not familiar with Mr. Curtis prior to this incident. He was able to walk to the clinic on his own accord. The only symptom that I recall him reporting to me was weight loss. He had no prior diagnosis of diabetes. He did not report to me other symptoms typically associated with diabetes, such as increased thirst, frequent urination, or blurred vision. Similarly, he did not report to me any symptoms associated with diabetic keto-acidosis, which can onset rapidly, such as excessive thirst, frequent urination, nausea and vomiting, abdominal pain, weakness or fatigue, shortness of breath, fruity-scented breath, or confusion.

(**# 108-1 ¶ 7**.)

Although there is a dispute of fact as to whether Nurse Lloyd knew of Mr. Curtis' serious medical need, the Court must construe the evidence most favorably to Mr. Curtis. Doing so, the Court concludes that the evidence, if true, could establish that Nurse Lloyd either knew that Mr. Curtis' condition required treatment or recklessly failed to take note of his condition and the fact

7

that it required treatment. Thus, there is sufficient evidence to establish subjective indifference.

Nurse Lloyd argues that she was a gatekeeper, not a medical provider, implying that someone other than she had the authority to provide treatment. In her declaration, however, Nurse Lloyd states:

> Based on Mr. Curtis' presentation and reported symptoms, I did not conduct an emergency assessment of him. In following the applicable Administrative Regulation, I determined that he did not present a medical emergency. There is no specific protocol for weight loss. I am not a mid-level provider and thus was unable to make diagnoses or prescribe medications or other treatment.
>
> Mr. Curtis was able to return to his housing unit on his own accord.

(**# 108-1 ¶¶ 8–9**.) The distinction between *gatekeeper* and *provider* has little meaning here because the parties agree that Nurse Lloyd denied an emergency assessment. Though gatekeepers generally follow preexisting protocols, they regularly make medical decisions in deciding what protocol to follow and whether to alert a provider. There is no evidence that a protocol instructed Nurse Lloyd *not* provide an emergency assessment under these circumstances. And assuming that Nurse Lloyd lacked the authority to provide the assessment, there is no evidence that Nurse Lloyd took any action to alert her superior as to the seriousness of Mr. Curtis' condition. So, effectively, she "shut the gate" as to his treatment.

Thus, the evidence is sufficient to show both objective and subjective indifference by Nurse Lloyd to Mr. Curtis' condition.

**B. Clearly Established Law**

Mr. Curtis points to a collection of circuit authority showing that pain and diabetes are serious medical conditions for which treatment is required. *See Lolli v. Cty. Orange*, 351 F.3d 410, 420 (9th Cir. 2003); *Ramos v. Lamm*, 639 F.2d 559, 575 (10th Cir. 1980). Of course, whether something is serious is a factual issue, which is addressed above. It is undisputed that

8

he was sent to hospital to be evaluated for diabetes keto-acidosis without further examination. Nurse Lloyd does not offer much except to say that, under *Mata*, a gatekeeper discharges her Eighth Amendment burden by following protocols. As the Court already discussed, the distinction between *gatekeeper* and *provider* is not really at issue here.

Mindful that the law must be clearly established in a *particularized* sense, *see Toler v. Troutt*, 631 F. App'x 545, 547 (10th Cir. 2015), the Court looks to the specific conduct analogous to that presented here. It has been clearly established in this Circuit since at least 2006 that a deliberate indifference claim will arise when "a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency". *Al-Turki v. Robinson*, 762 F.3d 1188, 1194 (10th Cir. 2014). The Court has not been presented with nor has it located authority that specifically addresses keto-acidosis, but it finds that such level of granularity is not necessary to put a reasonable medical provider on notice that failure to treat emergency symptoms of diabetes keto-acidosis may violate an inmate's constitutional rights. *Al-Turki* teaches that constitutional violation occurs when there is complete denial of care in the face of recognizable symptoms that could create a medical emergency. *Id.* at 1195

Here, it is undisputed that the symptoms that Mr. Curtis reported, and which were recorded in his medical records on the day he was seen by Nurse Lloyd, were serious and recognized as symptoms of diabetes keto-acidosis, a life-threatening condition. The security officer recognized the emergency nature of the symptoms in requesting the examination, and after Mr. Curtis fell unconscious, NP Sicotte recognized the seriousness of his condition. The clearly established law is that when there are recognizable symptoms that could create a medical emergency, some care must be provided. Nurse Lloyd did not provide any care, or even refer

Mr. Curtis to NP Sicotte, because she did not think that there was any emergency. As to what information Nurse Lloyd had when she made that decision, there is a factual dispute. For purposes of this motion, the Court must construe the facts most favorably to Mr. Curtis.

Thus, the Court finds that Mr. Curtis has stated a cognizable claim for delay or denial of medical care against Nurse Lloyd, that his need for emergency assessment was patent and his constitutional entitlement to medical care was clearly established. Accordingly, Nurse Lloyd is not entitled to qualified immunity. The matter should proceed to trial.

## V. CONCLUSION

For the foregoing reasons, the Defendant's Motion for Summary Judgment (**# 108**) is **DENIED**. The parties shall jointly contact chambers within 14 days to schedule a final pretrial conference.

Dated this 17th day of September, 2019.

BY THE COURT:

_Marcia S. Krieger_
Marcia S. Krieger
Senior United States District Judge